**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DHIA SHAKIR KALASHO,**

        **Petitioner,**

**v.**                                      **Civil Action No.: 3:21-CV-171
(GROH)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On October 26, 2021, Petitioner, by counsel, filed in the Eastern District of Michigan a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging the calculation of his sentence.   ECF No. 1.[1]  Petitioner was convicted in the Eastern District of Michigan in case number 18-CR-20063, but is currently housed in the Northern District of West Virginia at FCI Hazelton[2] in Bruceton Mills, West Virginia.  The case was transferred to this district on October 26, 2021.  ECF No. 2.  On July 21, 2022, Petitioner paid the filing fee.  ECF No. 14.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.  For the reasons set forth below, the undersigned recommends that the

---

[1] ECF Numbers cited herein refer to case number 3:21-CV-171 unless otherwise noted.

[2] See Bureau of Prisons Inmate Locator search https://www.bop.gov/inmateloc/.

Petition be denied and dismissed with prejudice.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   State Conviction and Sentence in Michigan

In 2017, Petitioner was arrested in Macomb County, Michigan for the offense of Controlled Substance Possession (Narcotic or Cocaine) Less than 25 Grams – 2nd Offense, under Case No. 17-4364-FH and remained in state custody.  ECF Nos. 19-2 at 1 – 2; 19-4 at 4.  Also in 2017, Petitioner was charged in Macomb County, Michigan, Case No. 17-4196-FH with the following offenses: (1) Controlled Substance – Possession Narcotic/Cocaine Less Than 25 Grams in violation of Michigan Code 333.74032A5; (2) Controlled Substance – Possession Analogues in violation of Michigan Code 333.74032BA; and (3) Assault/Resist/Obstructing a Police Officer in violation of Michigan Code 750.81D1.  Id.

Petitioner entered a guilty plea to all four offenses on February 15, 2018.  ECF Nos. 19-4 at 4.  On May 10, 2018, Petitioner was sentenced to: (1) a 178-day term of imprisonment in Case No. 17-4364-FH, with credit for 178 days already served from November 13, 2017, through May 10, 2018 [ECF Nos. 19-4 at 4 – 5; 19-11 at 7]; and (2) to a 1-to-15-year term of confinement in Case No. 17-4196-FH [ECF No. 19-12 at 5, 7].  Petitioner received 14 days of jail credit towards his state sentence in 17-4196-FH, from April 27, 2017, through April 28, 2017, and from August 7, 2017, through August 18, 2017.  ECF Nos. 19-4 at 3 – 5; 19-12 at 7.

While in custody of the state of Michigan, Petitioner was borrowed by federal law enforcement pursuant to a writ of habeas corpus ad prosequendum on June 5, 2018, to address charges filed in the Eastern District of Michigan.  ECF No. 19-5.  The "Individual

Custody/Detention Report" prepared by the United States Marshals Service shows that

on June 5, 2018, Petitioner was picked up from Egeler Correction Facility pursuant to a

writ of habeas corpus, to respond to the federal criminal charges described in Section

II.B. herein.  ECF No. 19-8 at 4.  Petitioner was returned to Egeler Correctional Facility

pursuant to the writ of habeas corpus on October 3, 2019.  Id.  On May 27, 2020, the

state of Michigan paroled Petitioner who was then taken into custody by the U.S. Marshals

to begin service of his federal sentence described below.

### B.      Conviction and Sentence in the Eastern District of Michigan[3]

On January 11, 2018, a complaint was filed in case number 2:18-CR-20063 in the

Eastern District of Michigan.  ECF No. 1.  On October 2, 2018, a third superseding

indictment was returned which charged Petitioner with various drug trafficking offenses.

ECF No. 41.  On April 3, 2019, Petitioner entered a plea of guilty to Count 1 of the third

superseding indictment which charged conspiracy to distribute a controlled substance, in

violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  ECF No. 68.  On August 27,

2019,[4] Petitioner was sentenced to 60 months of imprisonment.  ECF No. 71.

On October 8, 2021[5], Petitioner filed a motion[6] for a writ of habeas corpus pursuant

to 28 U.S.C. §2241 seeking an order which would direct the Bureau of Prisons to correct

---

[3] Throughout section II.B. all ECF numbers refer to entries in the docket of Criminal Action No. 2:18-CR-20063 in the Eastern District of Michigan.  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[4] Judgment was imposed on August 27, 2019, but the judgment order was not entered until August 28, 2019.  ECF No. 71 at 1.

[5] The motion is dated October 6, 2021, the certificate of service which appears on the same page is dated October 7, 2021, but the motion was not docketed by the Clerk until October 8, 2021.  ECF No. 93 at 11.

[6] The motion was also assigned a separate case number, 2:21-cv-12522.

Petitioner's sentence credit.  ECF No. 93.  On October 26, 2021, the District Court for the Eastern District of Michigan entered an opinion and order transferring that motion to this district because Petitioner is incarcerated in this jurisdiction.  ECF No. 94.

After transfer of the motion for habeas relief to this district, Petitioner sought additional relief in the Eastern District of Michigan.  On November 18, 2021, Petitioner filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  ECF No. 95. The district court denied Petitioner's motion to reduce sentence on January 24, 2022. ECF No. 100.  Petitioner filed a notice of appeal and sought a certificate of appealability on February 2, 2022.  ECF Nos. 103, 104.  That matter remains pending in the Sixth Circuit, docket number 22-1091.

### C.    Instant Petition for Habeas Corpus Under § 2241

Petitioner's sole claim for relief is that the Bureau of Prisons improperly computed his sentence, and unlawfully failed to give him credit for all the time he served while in federal custody.  ECF No. 1.  Petitioner contends that he was primarily in federal custody on May 18, 2018, and his sentence should be calculated from that date.  Id. at 2. According to Petitioner, he exhausted his administrative remedies as to his claim because he filed an appeal with the Central Office on June 4, 2021, but received no response within 40 days, as required.  Id. at 10.  Petitioner asks this Court to "enter an Order directing the Federal Bureau of Prisons to calculate Mr. Kalasho's sentence credit from May 18, 2018, as opposed to May 27, 2020."  ECF No. 1 at 11.

On September 9, 2022, Respondent filed a motion to dismiss, or in the alternative for summary judgment, along with a memorandum and exhibits in support.  ECF Nos. 19, 19-1 through 19-12.  Therein, Respondent argues that Petitioner is not entitled to credit

for time he spent in Michigan state custody prior to commencing his federal sentence on May 27, 2020.  ECF No. 19-1 at 6.  Further, Respondent argues that Petitioner properly received no credit toward his federal sentence from May 18, 2018, through May 27, 2020, because during that period Petitioner was serving his state sentence, and was not in the primary custody of the United States.  Id.  Respondent also argues that Petitioner did not receive credit for that two year and nine-day period because all that time was credited toward Petitioner's state sentence in Michigan.  Id. at 7.  Respondent also argues that Petitioner is not entitled to credit for any time that Petitioner was in federal custody pursuant to a writ, from June 5, 2018, through October 3, 2019, because for that period Petitioner remained in the primary custody of the state of Michigan, and was only "borrowed" by federal authorities.  Id. at 7 – 9.  Finally, Respondent argues that Petitioner failed to exhaust his administrative remedies prior to filing his petition for habeas corpus relief.  Id. at 9 – 12.

Petitioner filed a response on September 23, 2022, wherein he argues that he has "undertaken efforts to exhaust his administrative remedies prior to filing the instant petition."  ECF No. 20 at 1.  Petitioner asserts that he filed an appeal to the Central Office on June 4, 2021[7], and that pursuant to BOP Policy Statement No. 1330.18, a response was due not later than 40 days after the date of filing.  Id. at 2.  However, Petitioner contends that the response was not received until July 11, 2022, more than a year after Petitioner filed his appeal.  Id.

On September 30, 2022, Respondent filed a reply, which asserted that Petitioner's response did not address the substantive arguments contained in the motion to dismiss.

[7] Although Petitioner contends that he filed an appeal with the Central Office on June 4, 2021, he submits no documentation to support that contention.

5

ECF No. 21.  Further, Respondent argued that Petitioner misrepresented the timeline of administrative appeal to the BOP Central Office.  Id. at 1 – 2.  Attached to the reply are exhibits that Respondent contends demonstrate the following timeline for Petitioner's administrative remedy filings: (1) Petitioner submitted an Informal Resolution Form (BP-8) on January 16, 2022, which was denied on January 29, 2022 [ECF No. 21-1]; (2) Petitioner prepared his BP-9 Request for Administrative Remedy on January 29, 2022, which was denied by the acting warden on February 17, 2022 [Id. at 3]; (3) Petitioner next submitted a Regional Administrative Remedy Appeal, which was received on March 4, 2022, and denied by the Regional Director of the Mid-Atlantic Region on April 6, 2022[8] [Id. at 4 – 5]; (4) Petitioner then prepared a Central Office Administrative Remedy Appeal on May 30, 2022, which was received on June 15, 2022, and denied on July 19, 2022 [Id. at 6 – 8; ECF No. 19-3 at 3].

### III.    LEGAL STANDARD

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

---

[8] The document notes that the denial was not provided to Petitioner until May 24, 2022.  ECF No. 21-1 at 5.

### B.      Post-Conviction Remedies and Relief

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction.   By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated.   "As we noted in *O'Brien* [*v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005)], the 'essence of habeas corpus is an attack by a person in custody upon the legality of that custody' and 'the traditional function of the writ is to secure release from illegal custody.'"   Obando-Segura v. Garland, 999 F.3d 190, 194 (4th Cir. 2021), quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

### C.      Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.   The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir.

1993); see also Martin, 980 F.2d at 952.

**D.    Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."   Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id.  The "mere existence of a scintilla of evidence"

favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587.  "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

The issue of whether Petitioner exhausted his administrative remedies prior to filing the instant action is in dispute and has been addressed by both parties.  Petitioner asserts he exhausted his administrative remedies before he filed his complaint.  On the contrary, Respondent contends that Petitioner failed to exhaust his administrative remedies prior to filing his complaint, misrepresented the timeline of administrative appeal

10

to the BOP Central Office, and provides documents which show that Petitioner's central office remedy was denied on July 19, 2022.  ECF Nos. 21 at 1 – 2; 21-1.  Whether Petitioner exhausted prior to filing or not, it appears that while this matter has been pending, Petitioner's remedies were exhausted.  Accordingly, the undersigned addresses the merits of Petitioner's claims

Because the Petitioner is challenging the computation of his sentence, the consideration of his claims under § 2241 is appropriate.  The United States Supreme Court has long recognized that 18 U.S.C. § 3585(b) does not authorize a district court to compute a defendant's jail credit at sentencing.  United States v. Wilson, 503 U.S. 329, 334 (1992).  Rather, it is the United States Attorney General, acting through the BOP, who is responsible for computing an inmate's term of confinement.  This computation includes the determination of when the sentence commenced and the amount of credit for time served following a federal conviction and sentencing.  Id. at 333.  In making this computation, the BOP must adhere to 18 U.S.C. § 3585 which provides as follows:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence, at the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the defendant was arrested; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

In <u>Wilson</u>, the Supreme Court expressly rejected Wilson's argument that § 3585(b) authorizes a district court to award credit at sentencing, reasoning that:

> Section 3585 indicates that a defendant may receive credit against a sentence that "*was imposed.*"  It also specifies that the amount of the credit depends on the time that the defendant "*has spent*" in official detention "prior to the date the sentence commences."  Congress' use of a verb tense is significant in construing statutes.  By using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence.  A district court, therefore, cannot apply § 3585(b) at sentencing.

<u>Wilson</u>, <u>supra</u>, at 333 (emphasis in original, internal citations omitted).

In the instant case, the Petitioner seeks credit for the time he spent in state custody in Michigan, before he was released to commence his federal sentence imposed in the Eastern District of Michigan.  Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence, and that BOP should have given him credit toward his federal sentence for time spent in state custody from May 18, 2018, through May 27, 2020.  ECF No. 1 at 11.

However, the documents provided by the Respondent demonstrate that during his time spent in state custody, Petitioner was borrowed by United States Marshal Service, from state authorities, but that he remained in the primary custody of Michigan while in temporary federal custody.  ECF No. 19-8 at 4.  Petitioner was taken into temporary federal custody on June 5, 2018, then returned to state custody on October 3, 2019.  <u>Id.</u> Petitioner was discharged from the custody of the Michigan Department of Corrections on May 27, 2020.  <u>Id.</u>  Upon sentence computation by the BOP, Petitioner was not granted

any prior custody credit for the period from June 5, 2018, through October 3, 2019, because that time was applied to Petitioner's other state sentence.

Although Petitioner's federal sentence was imposed on August 27, 2019, at that time Petitioner was only in temporary custody of the U.S. Marshals Service pursuant to a Writ of Habeas Corpus Ad Prosequendum.  ECF Nos. 19-5; 19-8 at 4.  After imposition of sentence, Petitioner was returned to state custody, with a federal detainer.   ECF No. 19-8 at 4.  Upon Petitioner's release from state custody, based on the federal detainer, Petitioner was transferred to federal custody on May 27, 2020.  ECF Nos. 19-8 at 4, 19-9.

Petitioner's service of his state sentence in Michigan prior to commencement of his federal sentence prohibited him from receiving simultaneous credit for that state custody.  Consistent with 18 U.S.C. § 3585(b), a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence."  Further, although petitioner was taken into temporary custody of United States Marshals, by way of a federal Habeas Corpus Ad Prosequendum, during that period of temporary custody he remained in the primary custody of the state of Michigan and received credit for that time towards his state sentence.

The Fourth Circuit has recognized that:

> A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum.* Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.

13

United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) (citing Thomas v. Whalen, 962

F.2d 358, 361 n. 3 (4th Cir.1992); and Thomas v. Brewer, 923 F.2d 1361, 1366–67 (9th

Cir. 1991) (producing state prisoner under writ of habeas corpus *ad prosequendum* does

not relinquish state custody)).

Petitioner was not taken into federal custody until May 27, 2020.  It is impossible

for Petitioner to receive credit toward his federal sentence before that sentence

commenced by his transfer to federal detention.  Accordingly, Petitioner could not receive

federal custody credit before May 27, 2020.

Consistent with the provision of § 3585 which mandates a defendant shall receive

credit toward the service of a term "that has not been credited against another sentence,"

Petitioner was not eligible to obtain credit for time served prior to commencement of his

federal sentence, because he was already receiving credit for that time toward his state

sentence.  Accordingly, BOP, appropriately determined the date that Petitioner started

his sentence was the date he was taken into federal custody, consistent with the

provisions of 18 U.S.C. §§ 3585(b).

Although Petitioner asserts that the Bureau of Prisons incorrectly calculated his

sentence, and refuses to grant him credit for time served in state custody, it is clear from

18 U.S.C. §§ 3585, 3621 and 3632 and the holding of Wilson, that neither the warden nor

the Court calculate sentences for federal inmates.  That task is the exclusive responsibility

of the Bureau of Prisons, and it pursuant to the holding of Wilson this Court may not usurp

the Bureau of Prisons' authority.  Moreover, a review of § 3585 shows that Petitioner's

sentence was properly calculated to commence on the date he was released from state

14

custody and entered federal custody.  Thus, Petitioner has received all custody credit to which he was entitled, and his request for relief is without merit.

## V.  RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE.**

It is further **RECOMMENDED** that Respondent's motion to dismiss or for summary judgment [ECF No. 19] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:       October 4, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE